[No. 3182.]

## ROBERT MILLER *v.* THE STATE.

1. BURGLARY—THEFT—INDICTMENT—PENALTY.—It is no objection to an indictment that it charges both burglary and theft, but a conviction cannot be had for both offenses when thus charged in the same indictment, and a separate punishment assessed for each, or a joint punishment assessed for both. The correct doctrine has been thus stated: "If both (burglary and theft) are charged in one indictment, it is clear that the theft would be included in the burglary, and that no judgment could be rendered for the theft; and, in such a case, the conviction for burglary would be a bar to a subsequent prosecution for theft."

2. SAME—VERDICT.—The indictment charging both burglary and theft, and the verdict being "guilty as charged in the indictment," the defendant stands convicted of both offenses, notwithstanding the presumptive intention of the jury to convict of burglary alone, inasmuch as the punishment assessed is the *minimum* prescribed for that offense. The issue of theft was not submitted by the charge. The court adjudged the defendant guilty of "robbery," and sentenced him for theft and burglary. *Held,* that the verdict cannot stand, inasmuch as it is not warranted by the charge, and because, though it is conformed to by the sentence, it is not by the judgment. See the opinion *in extenso* on the subject.

APPEAL from the District Court of Bell. Tried below before the Hon. B. W. Rimes.

The indictment charged the appellant with the burglary of, and theft from, the house of one G. W. Klotts, in Bell county, Texas, on the twenty-seventh day of January, 1884. He was found guilty as charged in the indictment, and was awarded a term of two years in the penitentiary as punishment.

G. W. Klotts was the first witness for the State. He testified that he lived in Bell county, Texas. He was a farmer, and lived in an isolated house, his nearest neighbor, Mr. R. W. Scott, living in a house some three or four hundred yards distant. The witness kept no locks on his doors, but was in the habit of fastening them with latches. On the afternoon of Saturday, January, 1884, the witness took his wife and went to spend the Sabbath (next day) with his wife's father. Mr. Scott had consented to feed the witness's stock, and look after his place, during his absence. The witness positively knew that when he left his house on Saturday evening he left every window down and every door closed and latched. It was an utter impossibility for

A 1

any one to enter that house during the absence of the witness without either raising a window or opening a door.

The witness left in his house, on the occasion spoken of, household and kitchen furniture exceeding in value the sum of fifty dollars. Among other things the witness left in his house an album which belonged to him, and which contained gem pictures and other likenesses of his family and relatives. The album was worth perhaps seventy-five cents or one dollar. It was left in a trunk inside the house.

When the witness and his wife returned to their house on Sunday afternoon they found the doors still shut and the windows still down. Within the next two or three days the witness found that during his absence his trunk had been opened, its contents disordered and the album removed. The witness then began his inquiries, and, acting on certain information he received, he went to Mr. Alfred Ford's, and there found the defendant. Mr. Ford returned the album. Mr. Scott, who was with the witness, identified the defendant, and he was arrested. This was on the Sunday following the Sunday witness and his wife spent with his wife's father. The defendant on trial was the man arrested at Ford's house. The witness had never seen the defendant before the arrest, but had a description of him. The house of the witness was entered during his absence, and the album taken without the knowledge or consent of the witness. The defendant made no statement at the time he was arrested.

R. W. Scott was the next witness introduced by the State. He testified that he lived in Bell county, Texas, some three or four hundred yards from the house occupied by State's witness Klotts. It was a prairie country, and the two houses were plainly in sight of each other. Klotts and his family were gone all day from home on Sunday, January 27, 1884. Witness did not know at what time they left on the evening before. In the forenoon of the Sunday on which Klotts was absent, the witness, who was standing at his horse lot, saw a negro riding a free traveling gray horse in the direction of Klotts's house. In a short while the witness observed the gray horse hitched to the post at the gallery of Klotts's house. Witness did not see the negro go into or come out of the house, but after a short time the negro passed back over the route he had gone, passing within fifty feet of witness. Witness noticed him closely, as it was an unusual thing to see a negro in that section of the country, and he noticed the horse closely because he was an unusually free trav-

eler.  The witness's attention was more directly attracted by the negro, who on going back seemed to be trying to hide something under his coat.  The witness thought that perhaps the negro had stolen his, witness's, plow lines, which he had left on a plow which he had left near Klotts's house.  He went immediately to see about his plow lines, and found them safe.  As soon as the witness heard of Klotts's album being gone he started out with Klotts to find the negro.  They found the negro at Mr. Ford's, and arrested him.  The negro on trial is the same identical negro that the witness saw ride the gray horse past his house and up to Klotts's house, and who, as stated, they arrested at Ford's.  They took the negro before 'squire Goode, the justice of the peace at Mountain Home, and thence took him to Belton and lodged him in jail.  Ford gave Klotts his album.  Witness had never seen the negro prior to the Sunday of the burglary.

Alfred Ford, the last witness, testified, for the State, that he knew the defendant.  The defendant came to Bell county in the fall of 1883 from Tom Green county, where he had been working for the witness's son.  Since his arrival in Bell county the defendant has been staying on the witness's place, working at odd jobs.  The defendant customarily rode a gray horse.  There was no other negro on the witness's place who looked in the least like the defendant, or who owned and rode a gray horse. The "boys' room" in the witness's house, before the fire place of which the defendant generally slept, was adjoined on one side by a lumber room.  Witness said nothing to the defendant when he first heard of the burglary, but proceeded to search the premises, and over the door casing in the lumber room he found the album which he afterwards turned over to Klotts.  Witness did not know who put the album over the door casing.  The defendant rode his gray horse off on the Sunday of the alleged robbery, and was gone the greater part of the day.

The sufficiency of the evidence and the correctness of the charge were questioned by motion for new trial.

No brief for the appellant has reached the Reporters.

*J. H. Burts,* Assistant Attorney General, for the State.

WILLSON, JUDGE.  The indictment charges burglary with intent to commit theft, and also charges theft of property of less value than twenty dollars.  By the charge of the court, the question as to the burglary was alone submitted to the jury.

The verdict of the jury found the defendant "guilty as charged in the indictment." The judgment of the court considered and adjudged him guilty of "robbery." He was sentenced to imprisonment in the penitentiary for a term of two years for "theft and burglary."

It is no objection to an indictment that it charges both burglary and theft. (*Howard* v. *The State,* 8 Texas Ct. App., 447; Code Crim. Proc., Art. 714; *Dunham* v. *The State,* 9 Texas Ct. App., 330.) But can a conviction be had for both offenses when thus charged in the same indictment, and a separate punishment assessed for each, or a joint punishment assessed for both? We think not. In *Howard* v. *The State, supra,* this court said: "If both are charged in one indictment, we think it clear that the theft would be included in the burglary, and that no judgment could be rendered for the theft. And in such a case the conviction for burglary would be a bar to a subsequent prosecution for theft."

In the case before us the conviction is for *both* offenses, that is, the indictment charges *both* and the verdict finds the defendant guilty as *charged in the indictment.* It was perhaps the intention of the jury to find the defendant guilty of the burglary alone, as the punishment assessed is the *minimum* prescribed by the law for that offense, and yet the plain language of the verdict includes both offenses. This verdict was not warranted, either by the charge of the court, because the issue of the defendant's guilt of the theft charged was not submitted to the jury by the charge. Again, while the judgment does not conform to the verdict, the sentence does, and the defendant is sentenced for both burglary and theft.

We might reform the judgment if there was anything certain in the verdict by which we could do so; but we would be proceeding upon uncertainties were we to undertake it. We could not make the judgment and sentence declare the conviction to be for burglary, when the verdict and sentence declare that it was for burglary and theft together. We could not make the judgment adjudge the defendant guilty of both burglary and theft, because he cannot be legally adjudged guilty of both these offenses in this case. We must reverse the judgment and remand the cause for a new trial, in order that these errors may be corrected.

*Reversed and remanded.*

Opinion delivered June 11, 1884.